## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Craig Chilcote and Kerri Edblad-Chilcote, as Natural Parents and Guardians of Minor G.C., | Case No. 0:22-cv-00430 -JRT/LIB |
| Plaintiffs, | |
| v. | |
| HealthPartners Insurance Company, an ERISA benefit plan, | |
| Defendant. | |

## SECOND AMENDED COMPLAINT

**COME NOW**, Plaintiffs Craig Chilcote and Kerri Edblad-Chilcote, as natural parents and guardians of minor G.C.("Plaintiffs") for their Complaint against Defendant, HealthPartners Insurance Company ("Defendant HP"), an ERISA Benefit Plan ("the Plan"), declare and state as follows:

### INTRODUCTION

1.      Plaintiffs Craig Chilcote and Kerri Edblad-Chilcote, on behalf of their minor daughter, G.C., receive health benefits through a group health plan (the "Plan"), issued and administered by Defendant HP, brings this action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1191 asserting that Defendant HP abused its discretion by wrongfully denying Plaintiffs' claim for emergency air-ambulance benefits (at the recommendation of the emergency room physician, Dr. David Piechota, MD at Essentia

Health – St. Mary's Medical Center, Duluth, Minnesota) under their employee health plan on February 20, 2020.

2.      Plaintiffs, under §502(a)(1)(B), assert that they properly made a claim for emergency fixed wing air ambulance benefits, have exhausted the Plan's administrative appeals process, is entitled to the emergency fixed wing air ambulance benefits under the Plan's terms and was denied the emergency fixed wing air-ambulance benefits allowed to them under the Plan, resulting in a debt, improperly against Plaintiffs.

## PARTIES

3.      Plaintiff Craig Chilcote resides at 404 Pinewood Lane, Duluth, St. Louis County, Minnesota.

4.      Plaintiff Kerri Edblad-Chilcote resides at 404 Pinewood Lane, Duluth, St. Louis County, Minnesota.

5.      Minor Plaintiff G.C. resides at 404 Pinewood Lane, Duluth, St. Louis County, Minnesota.

6.      Defendant HP Insurance Company's agent for service of legal process, according to the Plan, is identified as HealthPartners Insurance Company, 8170 – 33rd Avenue South, Minneapolis, Hennepin County, Minnesota 55440.

## JURISDICTION AND VENUE

7.      This action arises under the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. Sections 1132(1), (e), (f), and (g) as well as 28 U.S.C. Section 1331, as this action involves a claim by Plaintiffs for emergency healthcare benefits under Plaintiffs' health care plan regulated and governed under ERISA, including violations

2

under § 502(a)(1)(B). Additionally, venue is proper under ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2), because this is the district where the Plan is domiciled, where the Plaintiffs reside, and where Defendant does business.

## FACTUAL BACKGROUND

8.      Minor Plaintiff, G.C., has a history of sigmoid colon cancer which required several abdominal surgeries including a sigmoidoscopy and end-ileostomy (removal of her sigmoid colon) on 06/06/2019. All surgeries and emergency surgeries were performed at Cincinnati Children's Hospital, in Cincinnati, Ohio.

9.      On February 19, 2020, minor Plaintiff, G.C., was rushed to the Emergency Medicine Department at Essentia Health – St. Mary's Medical Center in Duluth, Minnesota for emergency services related to decreased ileostomy output, abdominal pain, bilious, and vomiting.

10.     Minor Plaintiff G.C. was diagnosed with pseudo intestinal neuropathic blockage. Due to her rare neuroblastoma cancer, medical history, surgeries, and the emergency nature of her condition, shortly after midnight on February 20, 2020, the emergency room physician David Piechota, MD at Essentia Health – St. Mary's Medical Center in Duluth, Minnesota placed an order with Guardian Life Flight, LLC to have minor G.C. transferred via fixed wing air-ambulance to her treatment gastrointestinal (GI) facility at Cincinnati Children's Hospital because he deemed that this mode of transportation and facility was the most appropriate due to minor G.C.'s rare and complicated medical history, past surgeries and deemed her a high-risk for SBO because of previous surgeries that induce adhesions.

3

11.     Up until February 20, 2020, Defendant HP paid all of minor G.C.'s related care including a previous air-ambulance flight to Cincinnati Children's Hospital. Both air-ambulance flights were completed by Guardian Life Flight, LLC, and have the same Run Report details, meaning the previous flight paid by Defendant HP in May 2019 did not differ in care or circumstances from the subject matter flight of February 20, 2020.

12.     Upon information and belief, Guardian Life Flight, LLC electronically submitted the February 20, 2020 claim to Defendant HP to which no explanation of benefits was issued until nearly 4 months later on June 8, 2020.

13.     Defendant HP alleges that it requested additional information from Guardian Life Flight, LLC to determine if the criteria for coverage was met but claims that it did not receive a response.

14.     Documentation shows that Defendant HP did not request additional information from Guardian Life Flight, LLC until April 8, 2020, nearly seven (7) weeks after the first submission of the claim.

15.     On June 3, 2020, Defendant HP denied coverage for air ambulance services by letter to Plaintiffs indicating that it was not approving the request because: "According to your plan's Ambulance and medical transportation medical coverage  policy, specific criteria must be met for coverage of Air Ambulance transportation. On April 8, 2020, we asked for the following information from your doctor: The run report for your air ambulance flight on February 20, 2020. We didn't receive any response, so we aren't able to determine that you met criteria. If your provider submits the necessary clinical information, we will review the request."

16.     On June 8, 2020, Defendant HP issued its first and only Explanation of Benefits ("EOB"), stating that "the claim file was closed because it is incomplete."

17.     On August 21, 2020, Guardian Life Flight, LLC provided the Trip Report to Defendant HP, along with the supporting medical records from the emergency medicine physician, David Piechota, MD, on call at the emergency medicine department at Essentia Health – St. Mary's Medical Center in Duluth, Minnesota who ordered the Flight which included why the flight was necessary: "the patient required air transport due to length of time, distance, and intensive care needed."

18.     On September 11, 2020, Defendant HP denied the claim again stating that it was not approving this request because: "There isn't documentation of obstacles (such as great distance or limited timeframes) involved with transporting you by ground ambulance to an appropriate hospital. There isn't documentation that use of a ground ambulance for transportation would have threatened your life or health. There isn't documentation that you were transported to the closest facility that could treat your condition. Prior authorization (pre-approval) wasn't obtained before the air ambulance services were received."

19.     On October 16, 2020, Guardian Life Flight, LLC appealed Defendant's denial of benefits.

20.     On 11/06/2020 Defendant HP acknowledged Guardian Life Flight, LLC Appeal by letter dated 11/06/2020.

21.     On November 24, 2020, Defendant HP requested a medical review from Medical Review Institute of America indicating that "the mother refused to transfer her to

Children's Minneapolis" and "the family feels this was the most appropriate mode of transportation" among other incorrect comments in an attempt to document its file.

22.    On December 4, 2020, Defendant HP again denies the appeal for coverage of the emergency air-ambulance transportation with Guarding Life Flight, LLC as "eligible services are covered only when medically or dentally necessary for the proper treatment of an insured. Our medical or dental directors, or their designees, make coverage determinations of medical or dental necessity restrictions on access and appropriateness of treatment, and they make final authorization for covered services. Coverage determinations are based on established medical policies, which are subject to periodic review and modification by the medical or dental directors."

23.    On April 30, 2021, Defendant HP wrote Ms. Chilcote and Guardian Life Flight, LLC indicating that it already reviewed and denied this appeal but that they may pursue a second level appeal within 180 days from the date of its first level appeal denial dated December 4, 2020.

24.    On June 8, 2021, Plaintiffs requested an External Appeal Review with the State of Minnesota Department of Commerce that included a letter from Dr. Hatchett with St. Mary's Medical Center, medical records from Cincinnati Children's for serviced provided January 28, 2021, and medical records from Children's of Minnesota dat4ed March 31, 23019, and clinical literature of which Defendant HP acknowledges by letter dated June 9, 2021.

25.    Despite numerous attempts to provide additional documentation and information to the External Appeal Review Examiner between June 9, 2021, and June 30, 2021, such

information and documentation was rejected by the External Appeal Review Examiner because it was claimed that either the contents were too large to be received or its internal software could not accept the format presented by Plaintiffs through the MPRO.org website.

26.     Due to the complications of email, Plaintiffs then requested that the additional information and documentation be allowed via flash drive or CD, by mail, but the examiner refused Plaintiffs' requests; therefore, the only information and documentation reviewed by the examiner at the State of Minnesota Department of Commerce was what was provided by Defendant HP.

27.     On July 1, 2021, the examiner at the State of Minnesota Department of Commerce denied Plaintiffs' claim based upon the limited information and documentation provided by Defendant HP.

28.     Throughout this process Defendant HP continued to deny this claim by incorrectly referring to this matter as non-emergency services, when in fact, the care minor G.C. received was emergency medical services, including the air ambulance claiming that "the criteria for fixed wing air ambulance services requires prior authorization from the health plan." The Plan is specifically required to cover emergency services without requiring the Chilcotes to obtain approval for emergency services or prior authorization in advance. Per the Plan "a certification request is to be made by phone to CareCheck® as soon as reasonably possible after the emergency. Due to the emergency nature of G.C.'s condition on the date of service, prior authorization was not required as alleged by Defendant HP.

29.     On November 12, 2020, Defendant HP contacted Plaintiff Kerri Edblad-Chilcote and asked her a series of questions, a copy of which Plaintiff did not review until February 2022.

30.     After Ms. Chilcote provided answers to those questions, Defendant HP attempted to contact Plaintiff's medical providers for additional information and, when they did not receive the answers they wanted, began contacting other medical facilities that did not treat minor Plaintiff G.C., in an attempt to contradict  what the emergency room doctor recommended, what Guardian Life Flight, LLC addressed in its appeal.

**THE PLAN**

31.     On or about July 10, 2006,  Plaintiff, Craig Chilcote purchased a national network Employee ERISA Health plan (Package CE380) through his self-owned, self-employed business, Expanding Horizons, Inc., Contract No. 3085985 which also covered his family members, including minor daughter, G.C.

32.     The plan is also an indemnity plan, meaning the plan allows the Chilcotes to choose their doctors and specialists, with no referrals required. The Chilcotes can choose to receive their care from a single doctor or several care providers.

33.     Under the plan, the Chilcotes are only responsible for paying their share of the cost through copayments and deductibles, whether in-network or out-of-network. The Plan is required to pay any additional costs beyond copayments and deductibles to the facilities directly.

34.     The Plan is specifically required to cover emergency services without requiring the Chilcotes to obtain approval for emergency services or prior authorization in advance. "A

certification request is to be made by phone to CareCheck® as soon as reasonably possible after the emergency. You will not be denied full coverage because of your failure to gain certification prior to your emergency" (*See* Section N.2 of the HealthPartners Insurance Company Group Insurance Certificate Medical Expense Benefits (GGC-900.37-SE (MEB-19).

35.     Conflict with Existing Law. The plan specifically states that

> "in the event that any provision of this Certificate is in conflict with Minnesota or federal law, only that provision is hereby amended to confirm to the minimum requirements of the law (i.e., ERISA)."

36.     Ambulance and Medical Transportation. Under HealthPartners Insurance Company Gold Minnesota Small Employer Plan Benefits Chart, page 6 (BCH-900.37-SE (CE380C-19) for covered services:

> "We cover ambulance and medical transportation for medical emergencies and as shown below." "Ambulance and medical transportation (other than non-emergency fixed wing air ambulance transportation) Network Benefits 75% of the charges incurred. Non-Network Benefits See Network Benefits."

37.     Unauthorized Provider Services. Section N.2 of the HealthPartners Insurance Company Group Insurance Certificate Medical Expense Benefits (GGC-900.37-SE (MEB-19) specifically states that:

> "Unauthorized provider services do not include emergency services as defined in Minnesota Statute 62Q.55, subdivision 3."

38.     For Medical Emergencies. Section N.2 of the HealthPartners Insurance Company Group Insurance Certificate Medical Expense Benefits (GGC-900.37-SE (MEB-19) specifically states that:

"A certification request is to be made by phone to CareCheck® as soon as reasonably possible after the emergency. You will not be denied full coverage because of your failure to gain certification prior to your emergency."

AND

"Procedure To Follow To Receive Maximum Benefits…a. For medical emergencies. A certification request is to be made by phone to CareCheck® as soon as reasonably possible after the emergency. You will not be denied full coverage because of your failure to gain certification prior to your emergency. Pursuant to the Plan: "Unauthorized provider services do not include emergency services as defined in Minnesota Statute 62Q.55, subdivision 3." Group Certificate, p. 6. Also, "For medical emergencies. A certification request is to be made by phone to CareCheck® as soon as reasonably possible after the emergency. You will not be denied full coverage because of your failure to gain certification prior to your emergency."

## LEGAL CLAIMS

### Count 1 – Plan Enforcement Under 29 U.S.C. § 1132(a)(1)(B)

39.     Plaintiff's first legal claim is brought under 29 U.S.C. Sec. 1132(a)(1)(B). Defendant HP must pay emergency benefits to Plaintiffs, or to their providers, according to the terms of their ERISA plan. A denial of a participant's or beneficiary's right to have a benefits claim determined in accordance with plan terms is an injury sufficient to establish constitutional standing.

40.     Plaintiffs suffered an injury when Defendant HP denied benefits promised by the Plan by failing to pay the services rendered by Guardian Life Flight, LLC , LLC. Defendant HP determination to deny benefits is an "adverse benefit determination" under ERISA.

41.     Defendant HP did not timely provide the specific reason or relevant Plan language or reasons for the adverse determination when issuing its explanation of benefits several

months later (or any rationale for the adverse benefit determination), nor did it cite to the specific correct plan provision on which its determination was based.

42.     By failing to comply with ERISA's requirements for adverse benefit determinations, Defendant HP violated its legal obligations under ERISA because it withheld benefits to which Plaintiff was entitled without complying with ERISA's requirements for adverse benefit determinations.

43.     Plaintiffs seek unpaid benefits in the amount withheld by Defendant HP, along with interest back to the date their claim was originally submitted to Defendant HP by its medical provider Guardian Life Flight, LLC on February 20, 2020.

44.     Plaintiffs' further requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant HP.

### Count 2 – Failure To Provide Full And Fair Review
### As Required By ERISA Brought Under 29 U.S.C. § 1132(a)(3)

45.     Plaintiff restates paragraphs 1-44 as if fully set forth.

46.     Plaintiff's second claim is for breach of fiduciary duty for violations of ERISA's required review process.

47.     Although Defendant HP was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 and related regulations.

48.     Defendant HP's decision to deny emergency benefits owed to Plaintiff is unauthorized by the terms of the Plan, as is Defendant HPs failure to disclose a timely methodology for denying benefits owed to Plaintiff and other critical information relating to such claim denial.

11

49.     By engaging in this conduct, including using improper plan language as it relates to emergency services for the specified health care services, and making baseless efforts to reach out to others in the medical community and not relying on Plaintiff's treating and qualified medical doctors, delaying the processing of the claim in a timely manner, without notifying Plaintiff for properly submitted claims without disclosure or authority, Defendant HP failed to comply with ERISA. Defendant HP failed to provide a "full and fair review," failed to provide a reasonable and timely claim procedures and failed to make necessary disclosures to Plaintiffs in its attempts to slow the process in an effort to create a bias revise, all of which filed to comply with ERISA.

50.     Any appeal of the Plaintiff's claim should be deemed exhausted or excused as Plaintiffs have exhausted all administrative procedures to seek corrective action prior to commencing this lawsuit by filing the necessary claims and appeals as outlined in the Plan.

51.     Defendant HP decision to continue denying Plaintiffs their rightful benefits under the Plan, even after Plaintiffs properly submitted supporting documentation by its treating doctors, including Guardian Life Flight, LLC, and exhausting all appeals available to them, under ERISA should be deemed to be futile.

52.     Plaintiffs have been harmed by Defendant Health Partners' failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133, and by their failure to disclose relevant information in violation of ERISA.

53.     Plaintiffs are also entitled to injunctive and declaratory relief to remedy Defendant HP violation of these provisions.

**WHEREFORE**, Plaintiffs request the following:

1.     An order requiring Defendant HP to fully adhere to ERISA's "full and fair" review appeals process; including (a) requiring it to make its determination based upon the correct Plan language regarding emergency services, as well as the No Surprises Act of ERISA compelling Defendant HP to cover emergency services without preapproval for services in advance ("prior authorization"); (b) cover emergency services by out-of-network providers, and either (c) base what Plaintiff's owe Guardian Life Flight, LLC (cost-sharing) on what it would pay an in-network provider or facility and show that amount in Plaintiffs explanation of benefits or (d) count any amount Plaintiffs pay for emergency services or out-of-network services Plaintiffs' in-network deductible and out-of-pocket limit.

2.     An order requiring Defendant HP to pay for benefits due under the plan, specifically the Guardian Life Flight, LLC claim of February 20. 2020, with interest on the Guardian Life Flight, LLC bill while benefits are being withheld or denied.

3.     Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

*STICH, ANGELL, KREIDLER & UNKE, P.A.*

Dated:  March 15, 2022          By:  s/Kirsten J. Hansen
                                     Kirsten J. Hansen (#0320067)
                                     France Place
                                     3601 Minnesota Drive, Suite 450
                                     Minneapolis, MN 55435
                                     Telephone:  612-333-6251
                                     Facsimile:  612-333-1940
                                     E-mail:  khansen@stichlaw.com

                                     *Attorneys for Plaintiffs Craig Chilcote and Kerri
                                     Edblad-Chilcote, as Natural Parents and
                                     Guardians of Minor G.C.*

14